```
                                                    USDC SDNY
                                                    DOCUMENT
UNITED STATES DISTRICT COURT                        ELECTRONICALLY FILED
SOUTHERN DISTRICT OF NEW YORK                       DOC #: _____
                                                    DATE FILED:  01/18/2024
UNITED STATES OF AMERICA,

        -v.-                                        23-CR-200 (NSR)
                                                    OPINION & ORDER
MATTHEW CHISHOLM,

                        Defendant.
```

NELSON S. ROMÁN, United States District Judge:

Defendant Matthew Chisholm ("Defendant") was charged by Complaint on December 16, 2022, with unlawful possession of ammunition after a felony conviction in violation of 18 U.S.C. § 922(g)(1) and arrested on December 20, 2022. (*See* ECF Nos. 1, 3.) On April 17, 2023, a grand jury in this District returned a one-count Indictment with the same charge. (ECF No. 13.) On November 8, 2023, Defendant filed a motion to dismiss (the "Motion") the Indictment pursuant to Federal Rules of Criminal Procedure 12 challenging the constitutionality of 18 U.S.C. § 922(g)(1). (ECF No. 23.) For the following reasons, Defendant's motion to dismiss is DENIED.

## BACKGROUND

On or about December 7, 2022, at approximately 9:05 a.m., the Defendant went to visit his mother at a hospital in New Rochelle, New York, with a black suitcase (the "Suitcase") and a brown backpack (the "Backpack") attached to the handle of the Suitcase. (ECF No. 1, Complaint ("Compl.") ¶ 3a.) After signing in at the front desk, the Defendant proceeded to his mother's hospital room. (*Id*.) Approximately two and a half hours later, he left the hospital, but did not bring the Suitcase or Backpack with him. (*Id*. ¶ 3b.)

Around the same time that the Defendant was leaving the hospital, nurses on the third floor told a security guard ("Security Guard-1") that, while the Defendant was on the third floor, he was

yelling and cursing. (*Id.* ¶ 3c.) The nurses also told Security Guard-1 that two other individuals overheard heard him say he would shoot up the hospital. (*Id.*) One of the nurses saw the Suitcase and Backpack had been left in the room Defendant had visited. (*Id.* ¶ 3d.) Security Guard-1 opened the Suitcase and identified a red bag that contained a dismantled handgun and live rounds of ammunition. (*Id.*)

On November 8, 2023, Defendant filed the instant Motion on grounds that the Second Amendment of the United States Constitution renders 18 U.S.C. § 922(g)(1) facially unconstitutional. (*See* "Defendant's Memorandum of Law" or "MOL", ECF No. 24.) The Government filed an opposition brief ("Opposition" or "Opp.") on December 2, 2023 (ECF No. 25), and the Defendant replied ("Reply") on December 21, 2023 (ECF No. 26).

## LEGAL STANDARD

The Second Amendment to the Constitution of the United States provides: "A well regulated Militia, being necessary to the security of a free State, the right of the people to keep and bear Arms, shall not be infringed." U.S. CONST. amend. II. Throughout its modern Second Amendment jurisprudence, the Supreme Court has consistently limited its recognition of Second Amendment rights to "law-abiding citizens" and has noted its approval for felon-in-possession laws. In *District of Columbia v. Heller*, for example, the Supreme Court struck down the District of Columbia's "ban on handgun possession in the home" and "its prohibition against rendering any lawful firearm in the home operable for the purpose of immediate self-defense." 554 U.S. 570, 635 (2008). In doing so, the Supreme Court recognized the core of the Second Amendment as "the right of *law-abiding*, responsible citizens to use arms in defense of hearth and home." *Id.* (emphasis added). The *Heller* Court made clear "the right secured by the Second Amendment is not unlimited" and that "nothing in our opinion should be taken to cast doubt on longstanding

2

prohibitions on the possession of firearms by felons." *Id.* at 626; *see also id.* at 626-27 n.26 (characterizing the felon-in-possession law as a "presumptively lawful regulatory measure[ ]").

Two years later, in *McDonald v. City of Chicago*, the Supreme Court held that the Second Amendment right to possess handguns in the home for the purpose of self-defense is "fundamental to our scheme of ordered liberty" and "deeply rooted in this Nation's history and tradition." 561 U.S. 742, 757 (2010) (internal quotation marks and emphasis omitted). In so holding, a plurality of the Supreme Court "repeat[ed *Heller*'s] assurances' that "our holding d[oes] not cast doubt on such longstanding regulatory measures as prohibitions on the possession of firearms by felons." *Id.* at 786 (internal quotation marks omitted).

In 2022, the Supreme Court rejected the "means-end scrutiny" framework that many courts of appeal had previously utilized in adjudicating Second Amendment challenges. *N.Y. State Rifle & Pistol Ass'n, Inc. v. Bruen*. 142 S. Ct. 2111, 2128–29. Once again, the Supreme Court clarified that its latest decision did not undermine *Heller* or *McDonald* because neither "support[ed] applying means-end scrutiny in the Second Amendment context." *Id.* at 2127; *see also id.* at 2122 (describing its holding as "consistent with *Heller* and *McDonald*"); *United States*, v. *Gonzalez*, No. 1:23-CR-18-MKV, 2024 WL 96517, at *4 (S.D.N.Y. Jan. 9, 2024) ("[T]he *Bruen* majority opinion makes abundantly clear that *Heller* and *McDonald* stand as controlling precedents.") (quoting *United States v. King*, 634 F. Supp. 3d 76, 83 (S.D.N.Y. 2022)).

Unlike *Heller* and *McDonald*, *Bruen* did not include an explicit endorsement of felon-in-possession laws, but it did acknowledge that the right to keep and bear arms is "subject to certain reasonable, well-defined restrictions." *Id.* at 2156. In particular, while the Court in *Bruen* recognized "an individual's right to carry a handgun for self-defense outside the home," *id.* at 2122, it consistently characterized the holders of the right as "law-abiding" citizens. *See id.*

3

("recogniz[ing] that the Second and Fourteenth Amendments protect the right of an ordinary, law-abiding citizen to possess a handgun in the home for self-defense" and "agree[ing]" with both parties that "ordinary, law-abiding citizens have a similar right to carry handguns publicly for their self-defense"); *id.* at 2124–25 (describing the petitioners as "law-abiding, adult citizens"); *id.* at 2131 (describing the Second Amendment as "the very product of an interest balancing by the people" which "surely elevates above all other interests the right of law-abiding, responsible citizens to use arms" (internal quotation marks and emphasis omitted)); *id.* at 2133 (directing courts to consider, among other things, "how and why the regulations burden a law-abiding citizen's right to armed self-defense"); *id.* at 2134 ("It is undisputed that petitioners Koch and Nash—two ordinary, law-abiding, adult citizens—are part of 'the people' whom the Second Amendment protects."); *id.* at 2138 (noting that there is no "historical tradition limiting public carry only to those law-abiding citizens who demonstrate a special need"); *id.* at 2156 (similar, and concluding that "New York's proper-cause requirement violates the Fourteenth Amendment in that it prevents law-abiding citizens with ordinary self-defense needs from exercising their right to keep and bear arms"). Accordingly, *Bruen* preserved the constitutionality of felon-in-possession prohibitions as articulated in *Heller* and *McDonald*.

## DISCUSSION

In the instant Motion, the Defendant argues that, in light of *Bruen*, 18 U.S.C. Section 922(g)(1), which makes it unlawful for any person convicted of a felony to possess a firearm or ammunition, is facially unconstitutional. To make this argument, Defendant urges the Court to set aside *Heller* and *McDonald*'s guidance regarding felon-in-possession laws on the grounds that such statements are mere "dicta". (*See* MOL at 16-17; Reply at 3-5.) But even if such authority were dicta, "it does not at all follow that this Court can cavalierly disregard it." *United States v.*

4

*Hampton*, No. S2 21 CR. 766 (JPC), 2023 WL 3934546, at *12 (S.D.N.Y. June 9, 2023) (quoting *Cornwell v. Credit Suisse Grp.*, 729 F. Supp. 2d 620, 625 (S.D.N.Y. 2010)); *see also United States v. Bell*, 524 F.2d 202, 206 (2d Cir. 1975) ("While…dictum is not binding upon us, it must be given considerable weight and can not [sic] be ignored in the resolution of the close question we have to decide."). Moreover, six of the nine Justices on the *Bruen* Court authored or joined separate opinions which, among other things, noted that *Bruen* does not disrupt or abrogate *Heller* and *McDonald*'s endorsements of felon-in-possession laws. Justice Alito, for example, "reiterate[d]" that "[a]ll that we decide in this case is that the Second Amendment protects the right of law-abiding people to carry a gun outside the home for self-defense and that the Sullivan Law ... is unconstitutional," but that the Court's holding does not "disturb[ ] anything that we said in *Heller* or *McDonald* ... about restrictions that may be imposed on the possession or carrying of guns." *Id.* at 2157, 2159 (Alito, J., concurring). Similarly, in a concurring opinion joined by Chief Justice Roberts, Justice Kavanaugh noted that when "[p]roperly interpreted, the Second Amendment allows a 'variety' of gun regulations," including limitations on the possession of firearms by felons. *Id.* at 2162 (Kavanaugh, J., concurring) (quoting *Heller*, 554 U.S. at 636, 128 S.Ct. 2783). The three dissenting Justices also noted that they "underst[ood] the Court's opinion today to cast no doubt on th[e] aspect of *Heller*'s holding" that felon-in-possession laws are "presumptively lawful." *Id.* at 2189 (Breyer, J., joined by Sotomayor and Kagan, JJ., dissenting).

Furthermore, even if the statements from *Heller* and *McDonald* might be considered dicta, "the Second Circuit has turned what [the Defendant] characterizes as 'dicta' in *Heller* and *McDonald* into binding precedent." *United States v. Hampton*, No. S2 21 CR. 766 (JPC), 2023 WL 3934546, at *12 (S.D.N.Y. June 9, 2023). In *United States v. Bogle*, decided nine years before *Bruen,* the Second Circuit held that "§ 922(g)(1) is a constitutional restriction on the Second

5

Amendment rights of convicted felons." 717 F.3d 281, 281–82 (2d Cir. 2013) (*per curiam*). In doing so, the Second Circuit rejected a defendant's argument that Section 922(g)(1) violated his Second Amendment rights under "recent Supreme Court opinions [*i.e.*, *Heller* and *McDonald*] developing a more expansive interpretation of the Amendment," because "in both of these opinions, the Supreme Court clearly emphasized that recent developments in Second Amendment jurisprudence should not 'be taken to cast doubt on longstanding prohibitions on the possession of firearms by felons.'" *Id.* at 281 (quoting *Heller*, 554 U.S. at 626).

The Defendant attempts to dismiss *Bogle* as simply "a pre-*Bruen*, eight-sentence, per curiam" decision. (Reply at 3.) But, in deciding *Bogle*, the Second Circuit did not apply the means-ends scrutiny rejected by the Supreme Court in *Bruen*, but rather, "reasoned purely from language in *Heller* and *McDonald* expressly affirming longstanding prohibitions on the possession of firearms by felons." *United States v. Hampton*, No. S2 21 CR. 766 (JPC), 2023 WL 3934546, at *12 (S.D.N.Y. June 9, 2023). Moreover, even if *Bogle* was brief and "per curiam", the Second Circuit noted that it was a "precedential" opinion, *see Bogle*, 717 F.3d at 281; *see also United States v. Jimenez*, 895 F.3d 228, 233 (2d Cir. 2018) (citing *Bogle* as precedent "upholding the federal ban on ex-felons' access to firearms and ammunition."). As a precedential opinion, *Bogle* can only be "overruled either by an en banc panel of our Court or by the Supreme Court." *See United States v. Peguero,* 34 F.4th 143, 158 (2d Cir. 2022). Since the Second Circuit has yet to overturn *Bogle* and "absent proof that *Bruen sub silentio* overruled *Bogle*[]," this Court is bound by its holding. *See United States v. D'Angelo*, No. 23 CR. 327 (PGG), 2023 WL 9056404, at *4 (S.D.N.Y. Dec. 31, 2023).[1]

---

[1] In fact, this Court has repeatedly upheld the constitutionality of Section 922(g)(1) under *Bogle*'s binding precedent. *See e.g. United States v. Golston,* No. 23 CR. 362 (AT), 2024 WL 149603, at *5 (S.D.N.Y. Jan. 12, 2024) ("*Bogle* remains binding precedent, and Section 922(g)(1) remains constitutional."); *United States v. Barnes*, 2023 WL 2268129, at *2 (S.D.N.Y. Feb. 28, 2023) ("Because *Bruen* did not disturb either of those two precedents [*i.e.*, *Heller*

Defendant cites no in-District (or even in-Circuit) decision to the contrary, and instead asks this Court to follow a series of out-of-Circuit decisions. (*See, e.g.* MOL at 15 n.3, Reply at 3 (citing *United States v. Rahimi*, 61 F.4th 443 (5th Cir. 2023), *cert. granted*, No. 22-915, 2023 WL 4278450 (June 30, 2023); *Range v. Att'y Gen.*, 69 F.4th 96 (3d Cir. 2023); *United States v. Bullock*, 18 Cr. 165 (CWR), 2023 WL 4232309 (S.D. Miss. June 28, 2023).) "But the Court 'may not choose to follow the precedent set forth by some other circuit court of appeals which conflicts with a direct ruling by the Second Circuit.'" *United States v. Fayton*, No. 1:23-CR-00001 (JLR), 2023 WL 8275924, at *5 (S.D.N.Y. Nov. 30, 2023) (quoting *Christ the King Reg'l High Sch. v. Culvert*, 644 F. Supp. 1490, 1496-97 (S.D.N.Y. 1986), *aff'd*, 815 F.2d 219 (2d Cir. 1987)). Moreover, the out of-Circuit authority relied upon by Defendant consists primarily of cases decided on narrow grounds not applicable here, *see Range*, 69 F.4th at 106 ("Our decision today is a narrow one"), or discussing firearm regulations *other* than Section 922(g)(1), *see Rahimi*, 61 F.4th at 461 (holding that 18 U.S.C. Section 922(g)(8)'s prohibition on the possession of guns by someone subject to a domestic violence restraining order is unconstitutional). Finally, even if such decisions were analogous, they go against the weight of the authority analyzing Section 922(g)(1)'s constitutionality in *Bruen*'s wake. *See, e.g. United States v. Sternquist,* No. 22-CR-473(DLI), 2023 WL 6066076, at *6 (E.D.N.Y. Sept. 15, 2023) ("the list of post-*Bruen* precedent that is actually favorable to defendant's Second Amendment text-and-history argument basically begins and ends with the *en banc* opinion in *Range*[, 69 F.4th at 106].") (citation omitted); *id.* at *8 (describing

---

and *McDonald*], the Second Circuit's holding in *Bogle* continues to govern this issue."); *United States v. Craft*, 2023 WL 6215326, at *3 (S.D.N.Y. Sept. 25, 2023) (asserting that "*Bogle* remains controlling precedent in this Circuit" and rejecting the defendant's facial and as-applied challenges to § 922 (g)(1)); *United States v. Davila*, 2023 WL 5361799, at *2 (S.D.N.Y. Aug. 22, 2023) (restating *Bogle*'s holding that § 922(g)(1) is "a constitutional restriction on the Second Amendment rights of convicted felons" and denying the defendant's argument that § 922(g)(1) is unconstitutional facially and as applied to him); *United States v. King*, 634 F. Supp. 3d 76, 83 (S.D.N.Y. 2022) (rejecting both facial and as-applied challenges to the constitutionality of Section 922(g)(1)).

*Bullock*, 2023 WL 4232309, as "an outlier amongst many other district courts in the Fifth Circuit that have found § 922(g)(1) constitutional after *Bruen*.").

Because *Bogle*'s holding is binding upon this Court, Section 922(g)(1) is constitutional on its face, even in the wake of *Bruen*, and Defendant's challenge is denied. "In finding § 922(g)(1) constitutional under Second Circuit precedent, this Court joins the courts in this Circuit that have ended their analysis of § 922(g)(1)'s constitutionality based on *Bogle*'s binding effect and it need not engage in *Bruen*'s textual and historical inquiries." *See United States v. Warren*, No. 22-CR-231(DLI), 2023 WL 5978029, at *6 (E.D.N.Y. Sept. 14, 2023) (collecting cases).

## CONCLUSION

For the foregoing reasons, Defendant's motion to dismiss the Indictment is DENIED. The Clerk of Court is respectfully directed to terminate the motion at ECF No. 23.

Dated: January 18, 2024　　　　　　　　　　　　　　SO ORDERED:

White Plains, New York

_____

NELSON S. ROMÁN

United States District Judge